IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BREA BONNER,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. JKB-23-2062 |
| **KIMMICO, INC.,** *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss and Compel Arbitration. (ECF No. 6.) For the reasons stated below, Defendants' Motion will be granted and this case will be dismissed without prejudice.

### I. BACKGROUND

Plaintiffs Brea Bonner and Shakia April Love worked as exotic dancers at Fantasies Nightclub, which is owned and operated by the Defendants, Kimmico, Inc. ("Kimmico"), Jaguar Asset Management LLC, and Calvin Brockdorff. (ECF No. 1 ¶ 2, 5.) Plaintiffs allege that the Defendants "individually and collectively, had full authority to direct, alter, supervise, and manage" Plaintiffs' "job duties and responsibilities." (*Id.* ¶ 3.) The Plaintiffs each signed a contract with Kimmico. (ECF Nos. 6-2, 6-3.) Those contracts contain arbitration clauses. (*Id.*) The arbitration clauses state, in relevant part, as follows:

> We have discussed with you that law suits [sic] and going to court is expense [sic] and time consuming and often benefits mostly the lawyers involved. In order to save money on legal fees and expenses and settle any disputes between us as quickly and efficiently as possible, you agree with the Club and its affiliates that any existing or future claims or disagreements arising out of [sic] of/relating to your work with the Club, the termination of your work with the Club, or otherwise arising between you and the Club will be settled by final and binding confidential

1

arbitration in accordance with the "Federal Arbitration Act", and not with a jury or other trial. Arbitration shall be conducted before one arbitrator according to the Commercial Arbitration Rules of the American Arbitration Association, which can be found at https://adr.org, unless otherwise agreed to by the parties in writing. This means that we will present any disputes to an "arbitrator" (usually a retired judge or experienced lawyer) under relatively informal and easy to understand rules, as compared to a lawsuit. The arbitration includes all claims, asserted by either party, whether arising in tort or contract and whether arising under statute or common law, and include all claims or controversies that may have already arisen between you and the Club based on past services you may have provided to the Club. You and the Club agree to submit claims to the arbitrator regarding issues of whether something can be arbitrated, the validity, scope, and enforceability of this Contract Dancer Agreement, his or her jurisdiction, as well as any gateway, threshold, or any other challenges to this Agreement, including claims that this Agreement is unconscionable. The arbitration costs shall be paid for by the Club.

*Id.*

In June 2023, Plaintiffs contacted the Defendants about their claims, presumably seeking to resolve this dispute without litigation. (ECF No. 9 at 1–2.) In those letters, Plaintiffs requested that Defendants provide any binding arbitration agreements within the next month or Plaintiffs would "consider [Defendants] to have knowingly and intentionally waived [their] right to enforce such an agreement to compel arbitration of [Plaintiffs'] individual claims." (*Id.*) Defendants did not respond to this request, and Plaintiffs filed this complaint on July 31, 2023. (*Id.*) At that time, Plaintiffs also sent a courtesy copy of the complaint to the Defendants. (*Id.*) Defendants acknowledged receipt but did not bring any arbitration agreements to Plaintiffs' attention. (*Id.*) Defendants did not provide any copy of the arbitration agreements to the Plaintiffs until October 2, 2023. (*Id.*) Three days later, Defendants filed the instant Motion to Compel Arbitration and to Dismiss the Complaint. (ECF No. 6.)[1]

---

[1] The Court notes that, notwithstanding its dismissal of the case, Defendants' lack of responsiveness, clarity, and diligence have wasted the Plaintiffs' time, the Defendants' time, and this Court's time and resources.

## II. LEGAL STANDARD

The Court will proceed under 12(b)(3), which permits a defendant to challenge the venue, as directed by the Fourth Circuit. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365–66 (4th Cir. 2012); *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594 n.2 (4th Cir. 2023) ("[A]rbitration clauses are enforced in court by way of Federal Rule of Civil Procedure 12(b)(3) motions to dismiss for improper venue.").[2] Proceeding under Rule 12(b)(3), the Plaintiffs bear the burden of making a prima facie showing of proper venue in this Court. *Aggarao*, 675 F.3d at 366. The Court may consider evidence outside of the pleadings. *Id.* at 365–66. The Court will "view the facts in the light most favorable to the" Plaintiffs. *Id.*

Defendants can compel arbitration under the Federal Arbitration Act ("FAA," 9 U.S.C. § 1 et seq.) if they can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal" to arbitrate the dispute. *Stone*, 361 F.Supp.3d at 547.

---

[2] The Parties disagree regarding the appropriate rule under which to consider a motion to dismiss and compel arbitration. Plaintiffs contend that a summary judgment standard pursuant to Rule 56 is appropriate. (ECF No. 9 at 3–4.) Defendants, on the other hand, have moved to dismiss under Rule 12(b)(3). (ECF No. 6 at 3.) This disagreement reflects the varied approaches taken in this District. *See Stone v. Wells Fargo Bank, N.A.*, 361 F.Supp.3d 539, 548–49 (D. Md. 2019) (construing a motion to compel arbitration under Rule 12(b)(3) because "the Fourth Circuit has reiterated that a challenge based on a forum-selection clause, including an arbitration clause, should be addressed by way of a motion to dismiss for improper venue under Rule 12(b)(3)"); *Cheraghi v. MedImmune, LLC*, Civ. No. AW-11-1505, 2011 WL 6047059, at *2 (D. Md. Dec. 5, 2011) ("Generally, parties properly bring motions to dismiss in connection with a valid arbitration agreement under Rule 12(b)(6)."); *Muigai v. IMC Const., Inc.*, Civ. No. PJM-10-1119, 2011 WL 1743287 (D. Md. May 6, 2011) (dismissing in favor of arbitration under Rule 12(b)(1)); *Willcock v. My Goodness! Games, Inc.*, Civ. No. PWG-16-4020, 2018 WL 3970474, at *3 (D. Md. Aug. 20, 2018) ("The standard of review on a Motion to Compel Arbitration pursuant to the FAA is akin to the burden on summary judgment."). This debate is, however, academic. There is no meaningful difference between the various Rules in this context, and the Parties have not identified any way in which proceeding under a different Rule would change the outcome. The Defendants would prevail regardless.

## III. ANALYSIS

There is no dispute that the Parties meet the elements required by the FAA: they have a dispute, a written agreement containing an arbitration clause, a relationship to interstate commerce, and a failure to arbitrate. Accordingly, under the FAA, the arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at 546.

Plaintiffs argue that Defendants should be barred from enforcing the arbitration agreement for two reasons. First, Plaintiffs argue that Defendants are in default because they have "knowingly and intentionally waived their right to arbitrate this matter through their dilatory conduct." (ECF No. 9 at 7.) Second, Plaintiffs invoke the doctrine of equitable estoppel and argue that "Defendants [sic] conduct, including their silence, omission, and positive acts, render [sic] enforcement of the arbitration agreement and its delegation clause as inequitable." (*Id.* at 11.)[3]

However, parties "may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal quotation omitted).[4] The Parties have done so here. The arbitration clause provides that "[y]ou and the Club agree to submit claims to the arbitrator regarding issues of whether something can be arbitrated, the validity, scope, and enforceability of this Contract Dancer Agreement, his or her jurisdiction, as well as any gateway, threshold, or any other challenges to this Agreement, including claims that this Agreement is unconscionable."

---

[3] The Defendants also argued that Plaintiffs' class action claims are barred by the Contract Dancer Agreements. (ECF No. 6 at 8–9.) For the reasons stated *infra*, the Court will leave this issue to the arbitrator.

[4] An exception exists where "the party seeking arbitration so substantially utilized the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Pattern Grading & Paving, Inc. v. Skansa USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004). That exception does not apply here because the Parties are at the very beginning of the proceedings.

(ECF No. 6-2 at 3.) Further, the "federal policy favoring arbitration" establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24–25 (1983); *see also Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.").

Accordingly, because both Plaintiffs signed arbitration agreements, and because those agreements apply to arbitrability disputes, the Plaintiffs' contentions regarding arbitrability are subject to arbitration.[5] If an arbitrator determines that Defendants have waived the agreements or are estopped from enforcing them, Plaintiffs may return to this Court with their claims. Because all issues presented are arbitrable, dismissal without prejudice is appropriate. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).[6]

---

[5] Defendants raise the issue of whether nonsignatories, like two of the Defendants here, may be bound by the arbitration agreements, though Plaintiffs do not make any relevant arguments on this point. "[W]hen the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract" then arbitration may be compelled by a nonsignatory regarding such intertwined conduct. *See Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) (alterations omitted). Such intertwined conduct is alleged here. (*See* ECF No. 1 at ¶ 2–5.) Further, the arbitration agreements purport to apply to Kimmico and "its affiliates." (ECF No. 6-2 at 3.) And, as noted, the Plaintiffs voice no objection. Accordingly, particularly in light of this record, the nonsignatory Defendants may compel arbitration in this context.

[6] Plaintiffs contend that the settlement approval provision of the FLSA mandates a stay rather than a dismissal here. (ECF No. 9 at 12.) Plaintiffs, however, failed to direct the Court to (1) any case mandating such a result or (2) any provision of the FLSA stating that settlement through arbitration is disallowed. Plaintiffs' inability to identify relevant statutory language or case law (and the Court's inability to find any) indicates that no such result is required. In any case, the practical difference between a stay and a dismissal without prejudice in this context is relatively minor.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, it is ORDERED that:

1. This case is DISMISSED WITHOUT PREJUDICE;

2. The Clerk is DIRECTED to close this case.

DATED this __19__ day of December, 2023.

BY THE COURT:

_____
James K. Bredar
Chief Judge